UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF MICHIGAN
SOUTHERN DIVISION

JACQUELINE SAFFOLD,

                    Plaintiff,

                                        CASE NO. 17-CV-14088
v.                                      HON. GEORGE CARAM STEEH

E.L. HOLLINGSWORTH
& CO.,

                    Defendant.

_____/

**OPINION AND ORDER GRANTING DEFENDANT'S
MOTION FOR SUMMARY JUDGMENT (Doc. 29) AND
<u>DENYING PLAINTIFF'S MOTION FOR SANCTIONS (Doc. 27)</u>**

Pro se Plaintiff, Jacqueline Saffold, an African-American, who worked

for Defendant E.L. Hollingsworth & Co. for sixteen months, first as a data

entry specialist and later as a freight bill auditor, alleges she was denied a

promotion, discriminated in terms of pay and restricted overtime, and

eventually terminated on the basis of race in violation of Title VII, 42 U.S.C.

§ 2000e *et seq.*, Michigan's Elliott-Larsen Civil Rights Act ("ELCRA"), §

37.2101 *et seq.*, and 42 U.S.C. § 1981. Now before the court is

Defendant's motion for summary judgment and Plaintiff's motion for

sanctions. For the reasons set forth below, Defendant's motion for

summary judgment shall be granted, and Plaintiff's motion for sanctions shall be denied.

## I. Factual Background

Plaintiff was hired by Defendant E.L. Hollingsworth & Co.'s subsidiary, Native American Logistics in Troy, Michigan from November 30, 2015 through March 31, 2017, when she was terminated. Plaintiff filed an Equal Employment Opportunity Commission ("EEOC") discrimination charge alleging age, race, and sex discrimination on December 29, 2016. The EEOC dismissed the charge on January 10, 2017. (Doc. 29, Ex. A). After her termination, Plaintiff filed a retaliation claim with the EEOC on April 24, 2017. The EEOC dismissed the charge on September 15, 2017. (Doc. 29, Ex. B).

According to Plaintiff's EEOC complaint, she was first hired on November 30, 2015 as a data entry specialist and contract manager. Shortly after she was hired, she complained to the Director of Operations that the salary she was offered for the contract manager position was below the national average. She was then told the contract manager position was no longer available and remained employed as a data entry specialist. She claims her hours decreased while her workload increased. In July, 2016, she was transferred to the freight bill auditor position.

Although she claims the transfer was a promotion, she did not receive a pay increase and her overtime hours were reduced. Plaintiff alleged that she was subjected to discriminatory pay and denial of a promotion because she is a black female.

In support of its motion for summary judgment, Defendant relies upon the affidavit of Plaintiff's supervisor, Matthew Urbanski. His affidavit states that when Plaintiff began her employment with Defendant her duties included data entry of bills and lading information. (Doc. 29, Ex. E at ¶ 5). Her duties gradually increased to include small customer service items and volume quotes. *Id.* at ¶ 6. She was assigned the Winhold account, which involved shipments of commercial restaurant equipment. *Id.* at ¶ 6. Eventually, she took on the freight bill audit for Winholt only. *Id.* at ¶ 7. Because she was performing adequately, she was given the freight bill audit duties for all accounts. *Id.* at ¶ 9. When she complained about the volume of work, Urbanski removed audit duties for other accounts, leaving her only the freight bill audits for the Winholt account. *Id.* at ¶ 10. In the summer of 2016, Urbanski cut Plaintiff's overtime hours. *Id.* at ¶ 11. Plaintiff complained about the loss of income and asked about a raise, which Urbanski denied. *Id.* at ¶ 11-12. Plaintiff told him she lost her car due to her cut in overtime hours, and he allowed Plaintiff to work at home

for two to three days a week in November, 2016 for a month or two. *Id.* at ¶ 14. According to Urbanski, Plaintiff's situation of working from home increased to three to four days a week, and sometimes five days a week and stretched into March, 2017. *Id.* at ¶ 16. Urbanski states that he and Jeff Berlin made the decision to terminate Plaintiff and to assign her duties to other employees without hiring an additional employee. *Id.* at ¶ 18. Less than a year after her termination, Urbanski states that all bill of lading entry was automated, resulting in minimal freight bill audit responsibilities, thus rendering the need for her position irrelevant. *Id.* at ¶ 20.

In response to Defendant's motion for summary judgment, Plaintiff relies primarily on Defendant's Answer, discovery responses, affidavits, and other evidence submitted by Defendant which she claims is "contradictions, lies, deceit, dishonesty, and fraudulent." (Doc. 34 at PgID 779). She argues that Defendant has not submitted "documented evidence" to support Defendant's claim that her termination was not racially motivated. In her motion for sanctions, Plaintiff makes the same allegations. Plaintiff also relies on the exhibits that are part of her motion for sanctions as support for her response to Defendant's motion for summary judgment. The court has carefully reviewed all of the materials submitted by Plaintiff, both those in connection with her motion for

sanctions and those in connection with her response to Defendant's motion for summary judgment, and views the materials in total in its analysis of both motions.

In support of her motion for sanctions, Plaintiff attaches sixteen exhibits which include, among other things, Defendant's affirmative defenses, Answer, her dismissal letter, Defendant's letter to the EEOC regarding Plaintiff's charge of discrimination, Defendant's interrogatory responses, and Defendant's answers to her requests for admission, (Doc. 27, Ex. 3, 5, 8, 9, 11) which are highlighted, marked up as "lies" and submitted with a cover sheet stating that these items are a "fraud on the court." She also includes many e-mails to her supervisor, the human resources director, and others which she maintains demonstrate that she complained numerous times of discrimination in pay and lack of overtime hours. (Doc. 27, Ex. 2). She also has submitted a copy of a $1,400 bonus check she received in January, 2017 for work performed in 2016. (Doc. 27, Ex. 14). Plaintiff also relies on an e-mail from her supervisor responding to her complaint that overtime should have been in place for a particular project, and he writes, "We were not behind because we did not plan properly or plan for overtime. We fell behind because we were brought into this roll out about 3 months too late and the time period that HD and/or

Winholt wanted to finish this rollout and it is also the nature of project based business in the retail industry." (Doc. 27, Ex. 15). Plaintiff also submitted an affidavit stating that she never received a performance review, and she never spoke to the human resources director about pay discrimination, harassment and the like. (Doc. 27 at PgID 347). Her affidavit also states that she was replaced by a non-black employee, Defendant's financial outlook at the time of her termination was promising, and Defendant did not investigate her allegations of misconduct. (Doc. 27 at PgID 348). As to these last declarations, Plaintiff has not demonstrated personal knowledge as to the same.

## II. Standard of Law

Federal Rule of Civil Procedure 56(c) empowers the court to render summary judgment "forthwith if the pleadings, depositions, answers to interrogatories and admissions on file, together with the affidavits, if any, show that there is no genuine issue as to any material fact and that the moving party is entitled to judgment as a matter of law." *See Redding v. St. Eward*, 241 F.3d 530, 532 (6th Cir. 2001). The Supreme Court has affirmed the court's use of summary judgment as an integral part of the fair and efficient administration of justice. The procedure is not a disfavored procedural shortcut. *Celotex Corp. v. Catrett*, 477 U.S. 317, 327 (1986);

*see also Cox v. Kentucky Dep't of Transp.*, 53 F.3d 146, 149 (6th Cir. 1995).

The standard for determining whether summary judgment is appropriate is "'whether the evidence presents a sufficient disagreement to require submission to a jury or whether it is so one-sided that one party must prevail as a matter of law.'" *Amway Distrib. Benefits Ass'n v. Northfield Ins. Co.*, 323 F.3d 386, 390 (6th Cir. 2003) (*quoting Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 251-52 (1986)). The evidence and all reasonable inferences must be construed in the light most favorable to the non-moving party. *Matsushita Elec. Indus. Co., Ltd. v. Zenith Radio Corp.*, 475 U.S. 574, 587 (1986); *Redding*, 241 F.3d at 532 (6th Cir. 2001). "[T]he mere existence of *some* alleged factual dispute between the parties will not defeat an otherwise properly supported motion for summary judgment; the requirement is that there be no *genuine* issue of *material* fact." *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 247-48 (1986) (emphasis in original); *see also National Satellite Sports, Inc. v. Eliadis, Inc.*, 253 F.3d 900, 907 (6th Cir. 2001).

If the movant establishes by use of the material specified in Rule 56(c) that there is no genuine issue of material fact and that it is entitled to judgment as a matter of law, the opposing party must come forward with

"specific facts showing that there is a genuine issue for trial." *First Nat'l Bank v. Cities Serv. Co.*, 391 U.S. 253, 270 (1968); *see also McLean v. 988011 Ontario, Ltd.*, 224 F.3d 797, 800 (6th Cir. 2000). Mere allegations or denials in the non-movant's pleadings will not meet this burden, nor will a mere scintilla of evidence supporting the non-moving party. *Anderson*, 477 U.S. at 248, 252. Rather, there must be evidence on which a jury could reasonably find for the non-movant. *McLean*, 224 F.3d at 800 (*citing Anderson*, 477 U.S. at 252).

## III. Analysis

In her First Amended Complaint, Plaintiff alleges race discrimination and retaliation for filing an EEOC Complaint in violation of Title VII, ELCRA, and 42 U.S.C. § 1981. Plaintiff argues that she was denied equal pay and overtime, denied a promotion to logistics coordinator, and was ultimately terminated because of her race and in retaliation for filing an EEOC complaint. The court discusses her race and retaliation claims below.

## A.    Race Discrimination

The court first addresses Plaintiff's claims of race discrimination in violation of Title VII, ELCRA, and  42 U.S.C. § 1981. Claims of employment discrimination pursuant to ELCRA and § 1981 are analyzed under the same framework as Title VII claims. *See Rogers v. Henry Ford*

*Health Sys.*, 897 F.3d 763, 771 (6th Cir. 2018) (citing *Jackson v. Quanex Corp.*, 191 F.3d 647, 658 (6th Cir. 1999)).  A plaintiff asserting a race discrimination claim must produce either direct or indirect evidence of bias. *Id.*  In this case, Plaintiff seeks to proceed under the indirect method.

Absent direct evidence of discrimination, claims brought pursuant to Title VII, ELCRA, and § 1981 are subject to the *McDonnell Douglas/Burdine* tri-partite burden-shifting framework.  *McDonnell Douglas Corp. v. Green*, 411 U.S. 792, 802 (1973); *Texas Dep't of Comm. Affairs v. Burdine*, 450 U.S. 248, 252-56 (1981).  Under this framework, the plaintiff bears the initial "not onerous" burden of establishing a prima facie case of discrimination by a preponderance of the evidence.  *Burdine*, 450 U.S. at 253.  To establish a prima facie case of unlawful discrimination, a plaintiff must demonstrate that "(1) she is a member of a protected class, (2) she was qualified for her job; (3) she suffered an adverse employment decision; and (4) she was treated differently than similarly situated non-protected employees."  *Laster v. City of Kalamazoo,* 746 F.3d 714, 727 (6th Cir. 2014).  Should plaintiff satisfy the above elements, defendant has the burden of proving a legitimate, nondiscriminatory business reason for terminating plaintiff.  *Jackson v. VHS Detroit Receiving Hosp.*, 814 F.3d 769, 778 (6th Cir. 2016).  "Once the employer has come forward with a

nondiscriminatory reason for firing the plaintiff, the plaintiff must identify evidence from which a reasonable jury could conclude that the proffered reason is actually a pretext for unlawful discrimination." *Id.* at 779 (citation and internal quotation marks omitted).

Plaintiff concedes she does not have direct evidence of race discrimination and seeks to proceed under the indirect method. Defendant argues that Plaintiff has not satisfied her prima facie case because she has not met the third or fourth prong. As to the third prong, Defendant argues that Plaintiff was not qualified for the position for which she sought a promotion, and in any event, she declined to pursue the position. Indeed, Defendant has submitted an e-mail from Plaintiff in which she states, that "I did speak with Matt about the transition to the Collections position. However, I am going to decline consideration at this time." (Doc. 29, Ex. D at PgID 640). Plaintiff does not respond to Defendant's proofs that she declined to pursue the position, but responds that she was qualified for promotion to the position as logistics coordinator because she is college educated, with twenty years of experience in accounting. Given that Plaintiff withdrew from consideration from the position, she has not met the third prong as to her denied promotion claim. Defendant does not address

Plaintiff's qualifications for the freight auditor position, and so the court proceeds under the assumption that she was qualified for that position.

As to the fourth prong, Defendant argues that Plaintiff has not shown that any similarly situated persons outside the protected class were treated more favorably than her. Plaintiff argues that after her termination, she was replaced by a white woman named "Carol." Plaintiff has introduced no evidence to support this assertion. Defendant, on the other hand, relies on the affidavit of Plaintiff's supervisor, Matthew Urbanski, who avers that Plaintiff was not replaced, and her responsibilities were reallocated to other existing employees. (Doc. 29, Ex. E at PgID 646 ¶ 18). Also, Plaintiff has not come forward with any evidence to suggest that any non-minority employees in the data entry specialist or freight auditor position were paid better or afforded more overtime than her.

Plaintiff focuses not on her own proofs, but responds that Defendant lacks documented evidence and argues that Defendant's own Answer, discovery responses, and affidavits are "lies" and amount to a fraud on the court. Plaintiff has not met her evidentiary burden by her claims that Defendant's proofs are "lies" and "misrepresentations." Plaintiff has failed to submit her own proofs which are sufficient to create a genuine issue of material fact as to her prima facie case.

In opposition to Defendant's motion for summary judgment, Plaintiff argues that (1) Defendant did not investigate her claims or racial discrimination, (2) Defendant hired white employees before, during, and after her employment, and (3) Defendant's statement that she was terminated for "economic business reasons" and for poor performance is false because the company was doing well financially and had awarded bonuses, including a bonus to her, and there is no performance review or other evidence of her poor performance. These arguments are insufficient to raise a genuine issue of material fact.

First, the court considers Plaintiff's claim that Defendant did not properly investigate her claims of racial discrimination. True, she has submitted numerous emails showing that she complained to her supervisors and others about her pay and restricted overtime, (Doc. 27, Ex. 2), but she has not demonstrated that an investigation, if indeed such an investigation did not take place, of these complaints would have unearthed proof of any discrimination. She has not shown that any non-minority employees were paid more than her for the same position or allowed to work more overtime. Second, the fact that Defendant hired Caucasians before, during, and after Plaintiff's termination, is not evidence that Defendant discriminated against Plaintiff. Finally, Plaintiff responds that

Urbanski's averment that she was terminated for poor performance is not supported by any documentation and is contradicted by an email from Bill Hart. The e-mail from Bill Hart which she references (Doc. 27, Ex. 13) is dated October 28, 2015 prior to her hiring and does not relate to the sixteen months during which Plaintiff worked for Defendant. Plaintiff also argues that Defendant distributed bonuses, including a bonus to Plaintiff in January, 2017; thus, making Defendant's statement that it was terminating her for "economic business reasons" pretext for discrimination. Defendant's termination letter states that "[a]t this time, we have decided to phase out the Freight Bill Auditor position." (Doc. 27, Ex. 8). Even if Defendant was financially sound, and Defendant has not disputed that they were, its financial wherewithal does not refute that its decision to eliminate Plaintiff's position and reassign her duties to others was a business decision. If so, employers could never reorganize their operations or terminate poor performers if their businesses were profitable.

In sum, Plaintiff has not come forward with sufficient proofs to create a genuine issue of material fact as to her prima facie case as she cannot show that she was treated differently in terms of compensation, overtime, promotion, or termination, to similarly situated persons outside the

protected class, and even if she had, she cannot show that Defendant's stated reason for terminating her was pretext for racial discrimination.

## B. Retaliation

Next, the court considers Plaintiff's claim that her termination was retaliation for her filing of an EEOC Complaint. Title VII prohibits an employer from retaliating against an employee "because [s]he has made a charge" of discrimination. 42 U.S.C. § 2000e-3(a). Michigan's ELCRA includes a similar provision, *see* Mich. Comp. Laws § 37.2701(a), which is analyzed under the same standard. *Kuhn v. Washtenaw Cty.*, 709 F.3d 612, 627 (6th Cir. 2013). Retaliation claims brought under § 1981 are also governed by the same standards as claims brought under the ELCRA and Title VII. *Rogers*, 897 F.3d at 771–72 (citing *Jackson*, 191 F.3d at 658). At the summary-judgment stage, a plaintiff must adduce either direct or circumstantial evidence to prevail on a retaliation claim. *Id.* When the plaintiff offers only circumstantial evidence of retaliation, the *McDonnell Douglas* burden-shifting framework applies. *Id.* at 771. Under this framework, the plaintiff must first make out a prima facie case of racial discrimination or retaliation. *Id.* at 772. Then, "the burden shifts to the employer to proffer a legitimate, nondiscriminatory [or nonretaliatory] reason for its decision." *Id.* If the employer does so, "the plaintiff must then

prove by a preponderance of the evidence that the reasons offered by the employer were pretextual." *Id.* (internal quotation marks and citation omitted).

Again, Plaintiff seeks to proceed under the circumstantial method; thus, the court analyzes the claim under the familiar *McDonnell Douglas* framework. Under that paradigm, a plaintiff has the initial burden to establish a prima facie case of retaliation under Title VII by establishing that: (1) she engaged in protected activity when she made her discrimination complaint; (2) defendant knew about her exercise of the protected activity; (3) defendant thereafter took adverse employment action against her; and (4) there was a causal connection between the protected activity and the adverse employment action. *Taylor v. Geithner*, 703 F.3d 328, 336 (6th Cir. 2013).

Only the fourth element of the prima facie case is in dispute. Defendant argues that Plaintiff cannot show that she was terminated in retaliation for filing her EEOC Complaint. Plaintiff argues the proximity in time between her EEOC Complaint and termination is sufficient to prove her retaliation claim. Plaintiff filed her EEOC Complaint on December 29, 2016, and was terminated on March 31, 2017. Although temporal proximity standing alone is not usually enough to establish causation,

where the protected activity is acutely near in time to the adverse employment action, the close proximity may be enough to permit an inference of retaliation. *Montell v. Diversified Clinical Servs.*, 757 F.3d 497, 505-08 (6th Cir. 2014). For example, in *Mickey v. Zeidler Tool & Die Co.*, 516 F.3d 516, 525 (6th Cir. 2008), the court found that "where an employer fires an employee immediately after learning of a protected activity, we can infer a causal connection between the two actions, even if [plaintiff] had not presented other evidence of retaliation." *Id.* at 525. However, this is not a case where Defendant immediately fired Plaintiff after learning of the filing of her EEOC Complaint; rather, three months had passed. As the Sixth Circuit noted in *Mickey*, it is only in those "limited" and "rare" cases that temporal proximity is enough to establish a causal connection. *Id.* "But where some time elapses between when the employer learns of a protected activity and the subsequent adverse employment action, the employee must couple temporal proximity with other evidence of retaliatory conduct to establish causality." *Id.* Plaintiff has failed to do so here.

Plaintiff also argues she has proven retaliation because Defendant allegedly did not properly investigate her complaints of racial discrimination, there are no documents in her employee file to support Defendant's claim she was a poor performer, and none of Defendant's white co-workers

suffered a negative impact on their income or hours and still remain employed. She also argues that Defendant's "contradictions, lies, deceit and fraud" in its answers to interrogatories and requests for production of documents, and other documents, establish that Defendant retaliated against her because she filed an EEOC Complaint. In order to survive a summary judgment motion, "mere allegations or denials in the non-movant's pleadings" are insufficient. *See Anderson,* 477 U.S. at 248, 252. Plaintiff has not met her burden.

First, Plaintiff's claim that Defendant did not properly investigate her claims of race discrimination does not raise the inference that she was terminated for filing an EEOC Complaint. She has not demonstrated that her complaints of unequal pay were founded as she has not shown that any co-workers outside the protected class were paid better than her or permitted to work more overtime in the same position. Second, the fact that there is no performance review in Plaintiff's personnel file is neutral, not proof that she was performing satisfactorily or not. Third, Plaintiff's claim that white co-workers were treated differently than her is unsubstantiated by any evidence. Plaintiff has not identified any white employees by full name or position, and it is merely rank speculation that they were paid better than her for the same position, allowed to work more

overtime for the same position, or allowed to continue working despite poor performance comparable to her. Finally, Plaintiff's argument that Defendant's discovery responses and evidence submitted in support of its motion for summary judgment are "lies" and "misrepresentations," is unsupported by contradictory proofs. It is Plaintiff's burden to establish a causal connection between the filing of her EEOC Complaint and her termination three months later. Although this burden is admittedly minimal, Plaintiff has not met it here. Accordingly, Plaintiff's retaliation claim shall be denied.

## C. Plaintiff's Motion for Sanctions

Plaintiff seeks sanctions under Federal Rule of Civil Procedure 11. Federal Rule of Civil Procedure 11(c) provides for sanctions when an attorney submits a pleading or other document that fails to comply with the requirements set forth in Rule 11(b). "[T]he test for the imposition of Rule 11 sanctions is whether the individual's conduct was reasonable under the circumstances." *Tropf v. Fidelity Nat'l Title Ins. Co.,* 289 F.3d 929, 939 (6th Cir. 2002). Rule 11 permits sanctions if "a reasonable inquiry discloses the pleading, motion, or paper is (1) not well grounded in fact, (2) not warranted by existing law or a good faith argument for the extension, modification or reversal of existing law, or (3) interposed for any improper purpose such as

harassment or delay." *Id.* at 626 (internal quotations marks and citation omitted).

1. *Plaintiff Failed to Follow Procedural Requirements*

First, Plaintiff's motion for sanctions must be denied because she did not serve Defendant with a copy of her motion 21-days prior to its filing as required under the mandatory safe-harbor provision of Rule 11(c)(2) which provides:

> A motion for sanctions must be made separately from any other motion and must describe the specific conduct that allegedly violates Rule 11(b). The motion must be served under Rule 5, but it must not be filed or be presented to the court if the challenged paper, claim, defense, contention, or denial is withdrawn or appropriately corrected within 21 days after service or within another time the court sets. If warranted, the court may award to the prevailing party the reasonable expenses, including attorney's fees, incurred for the motion.

Fed. R. Civ. P. 11(c)(2). *See Penn, LLC v. Prosper Bus. Dev. Corp.*, 773 F.3d 764, 766-67 (6th Cir. 2014) ("[f]ailure to comply with the safe-harbor provision precludes imposing sanctions on the party's motion"). Plaintiff sent Defendant two draft versions of her motion, but never served the actual motion she eventually filed with the court. Also, the draft motions she provided did not include any of the sixteen exhibits she filed with the

court.  Having failed to comply with the strictures of Rule 11(c)(2), Plaintiff's motion for sanctions must be denied.

2.    *Plaintiff Fails to Demonstrate any Violation of Rule 11*

Even if the court considers Plaintiff's motion for sanctions on the merits, she is not entitled to the relief sought.  In her motion for sanctions, Plaintiff alleges that Defendant's discovery responses, pleadings, and filings are false and that Defendant has failed to prove its defense.  The court has carefully considered all of the sixteen exhibits submitted by Plaintiff in connection with her motion for sanctions, including Kristina Lemons' affidavit, and finds that Rule 11 sanctions are not warranted. Plaintiff has not demonstrated that defense counsel or Defendant submitted documents containing factual contentions that lacked evidentiary support or denied factual contentions that were not reasonably based on belief or a lack of information, or were submitted for any improper purpose.

## IV. Conclusion

For the reasons set forth above, Defendant's motion for summary judgment (Doc. 29) is GRANTED and Plaintiff's motion for sanctions (Doc. 27) is DENIED.

Based on the preceding order, this Court certifies that any appeal from this decision would be frivolous, not in good faith and, therefore, pursuant to 28 U.S.C. § 1915(a)(3), may not be taken *in forma pauperis*.

**IT IS SO ORDERED**.

Dated:  February 19, 2019

<u>s/George Caram Steeh</u>
GEORGE CARAM STEEH
UNITED STATES DISTRICT JUDGE

---

CERTIFICATE OF SERVICE

Copies of this Order were served upon attorneys of record on February 19, 2019, by electronic and/or ordinary mail and also on Jacqueline Saffold, P.O. Box 48103, Oak Park, MI 48237-9998.

<u>s/Barbara Radke</u>
Deputy Clerk